J-A24009-17

NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37

| | |
|---|---|
| PLUM PROPERTY ASSOCIATES INC. | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| v. | |
| MINERAL TRADING COMPANY, LLC, A CORPORATION, AND JAMES R. CLARKE, JONATHAN LASKO AND MELISSA HENNIS, INDIVIDUALS | |
| v. | |
| S&K ENERGY, INC. APPELLANT | |
| | No. 944 WDA 2016 |

Appeal from the Order February 3, 2016
In the Court of Common Pleas of Washington County
Civil Division at No(s): 2011-5687

BEFORE:  MOULTON, J., SOLANO, J., and MUSMANNO, J.

MEMORANDUM BY MOULTON, J.:                    FILED DECEMBER 27, 2017

S&K Energy, Inc. ("S&K") appeals from the February 3, 2016 order entered in the Washington County Court of Common Pleas denying its objection to the sheriff's determination of its goods claim.  We affirm.

We previously summarized a portion of the relevant history of this matter as follows:

> Mineral Trading Company, LLC ("Mineral Trading"), is an Ohio corporation engaged in strip-mining and limestone operations in Hubbard, Ohio.[1]  Mulligan Mining, Inc. and/or Mulligan Mining Holdings, Inc. ("Mulligan Mining"), is a strip-

mining company in Burgettstown, Pennsylvania. Mineral Trading and Mulligan Mining share investors. In addition, Jo[nathan] Lasko ("Lasko") is the president of Mulligan Mining and the managing member of Mineral Trading. As the president and managing member, Lasko had the authority to act on behalf of Mulligan Mining and Mineral Trading at all relevant times.

> [1] By the date of the hearing, Mineral Trading was no longer in business. N.T., 3/15/13, at 17.

On July 27, 2011, Plum Property [Associates, Inc. ("Plum Property")] obtained a judgment in its favor in the Allegheny County Court of Common Pleas, Docket Number GD-10-001816, against Mineral Trading in the amount of $85,513.17.[2] Plum Property filed a praecipe for writ of execution in the Court of Common Pleas of Washington County and levied on five pieces of equipment that Plum Property asserted belonged to Mineral Trading.

> [2] In its brief, Plum Property states that it filed an action against Mineral Trading to collect payment for coal sales. Plum Property asserts that "[t]he judgment resulted from the grant of Plum Property's Motion for Summary Judgment, the basis of which was the admission by an officer of Mineral Trading in a deposition that Mineral Trading owed Plum Property $75,342 [plus prejudgment interest of $10,171.17, plus continuing interest and costs]."

On June 28, 2012, Mulligan Mining filed a goods claim, asserting ownership of the five pieces of equipment upon which Plum Property levied. On July 9, 2012, the [Washington County] Sheriff [("Sheriff")] determined that Mulligan Mining owned the equipment. Plum Property appealed the Sheriff's determination to the Court of Common Pleas of Washington County.

The trial court held an evidentiary hearing on March 15, 2013. At the hearing, the parties stipulated that Mulligan Mining owned four of the five pieces of equipment. Plum Property's only remaining issue was the ownership of a CAT Bulldozer, serial number 9XR170 (the "Dozer").

The evidence presented at the hearing showed that Mineral Trading purchased the Dozer for $425,000 in 2009. Mineral Trading experienced financial difficulties in 2010 and 2011. In order to keep the business afloat, Mulligan Mining transferred substantial funds to Mineral Trading. At the hearing, Lasko referred to these transfers as loans. Mineral Trading made payments to Mulligan Mining during this time, but the payments occurred without a set schedule or established interest rate.

Lasko testified at the hearing that Mulligan Mining executed an equipment purchase agreement and bill of sale with Mineral Trading to acquire the Dozer because Mineral Trading owed money to Mulligan Mining for outstanding loans. The bill of sale indicated that Mulligan Mining purchased the Dozer from Mineral Trading for $397,443.44, which Mineral Trading received as a credit against the balance of the outstanding loans owed to Mulligan Mining. Lasko further testified that since Mulligan Mining and Mineral Trading executed the equipment purchase agreement and bill of sale, the Dozer has been located at Mulligan Mining's site, used by Mulligan Mining in its operations, and is listed as Mulligan Mining's corporate asset.

On May 14, 2013, the trial court denied Plum Property's Objection to Sheriff's Determination of Ownership of Property, affirming the Sheriff's determination that Mulligan Mining owned the Dozer.

Plum Prop. Assocs., Inc. v. Mineral Trading Co., LLC, No. 970 WDA 2013, unpublished mem. at 1-4 (Pa.Super. filed July 29, 2014) (internal citations omitted; some alterations in original).

Plum Property appealed to this Court, and on July 29, 2014, we reversed the trial court's May 14, 2013 order; we concluded that the purported transfer of the Dozer from Mineral Trading to Mulligan Mining was without consideration and, thus, Mineral Trading owned the Dozer. On November 12,

- 3 -

2014, Plum Property filed a motion to compel the Sheriff to hold a sheriff's sale.

On November 21, 2014, as Plum Property proceeded on its execution with the Sheriff's Office, S&K filed a goods claim with the Sheriff, asserting that it owned the Dozer because of its purchase of loans and collateral security interests from Angus Coal SPE No. 1, LLC ("Angus Coal"). S&K claimed that it had purchased the loans on March 5, 2013, while Plum Property's appeal from the Sheriff's initial determination was pending in Washington County Court of Common Pleas. According to this goods claim, the debtors under the loan were Mulligan Mining (including both Mulligan Mining Holdings, Inc. and Mulligan Mining, Inc.), Mineral Trading, and New Coal Holdings, LLC. S&K claimed that the Dozer was collateral security for the loans. S&K also averred that the debtors had defaulted on the loans, and that it had seized and foreclosed on the secured collateral, including the Dozer.

The Sheriff denied S&K's goods claim on November 24, 2014. On December 23, 2014, the trial court entered an order directing the Sheriff to hold a sale of the Dozer. On January 13, 2015, S&K filed with the trial court a motion for reconsideration of the December 23, 2014 order, a petition for leave to file its objection to the Sheriff's goods claim determination nunc pro tunc, and the objection itself. S&K claimed that it had not received timely notice of the Sheriff's denial of its goods claim. That same day, the court

- 4 -

granted S&K's petition for leave to file an objection to the Sheriff's goods claim.

On March 5, 2015 and April 9, 2015, the trial court held hearings on S&K's objection to the Sheriff's determination. On February 3, 2016, the trial court denied S&K's goods claim and found that Mineral Trading owned the Dozer pursuant to this Court's July 29, 2014 determination. S&K then filed a motion for post-trial relief on February 16, 2016, and a motion for reconsideration on March 3, 2016. On June 16, 2016, after argument on April 6, 2016, the trial court denied S&K's motions. On June 28, 2016, S&K filed a timely notice of appeal.

S&K raises the following issues on appeal:

1. Whether the lower court committed an error of law and abuse of discretion in determining that the Superior Court's ruling that Mineral Trading Company, LLC, was the owner of the D11 R Dozer was dispositive of the case and that the S&K Energy, Inc., was estopped from asserting its goods claim.

2. Whether the lower court committed an error of law and an abuse of discretion when it found that S&K Energy, Inc., failed to meet its burden of proof to demonstrate its ownership of the D11 R Dozer by clear and convincing evidence.

3. Whether the lower court committed an error of law and an abuse of discretion when it failed to find that S&K Energy, Inc., had a perfected security interest that was superior to any rights of subsequent creditors and that entitled it to immediate possession of the D11 R Dozer upon default by debtors Mulligan Mining, Inc., and Mineral Trading Company, LLC.

4. Whether the lower court committed an abuse of discretion or an error of law in awarding reasonable counsel fees to

> Plum Property Associates, LLC, pursuant to Pa[.]R.C.P. 3213.

S&K's Br. at 3 (trial court answers omitted).

We must first determine whether this Court's previous disposition of the ownership of the Dozer pursuant to Plum Property's goods claim precludes S&K from later asserting an inconsistent goods claim. The trial court concluded that S&K was estopped from making its claim. See Trial Ct. Mem. Order, 2/3/16, at 3 (unpaginated). We agree and conclude that S&K is barred from making its goods claim under the equitable doctrine of laches.

This Court has described the doctrine of laches as follows:

> The doctrine of laches is an equitable bar to the prosecution of stale claims and is "the practical application of the maxim that 'those who sleep on their rights must awaken to the consequence that they have disappeared.'" The question of whether laches applies is a question of law; thus, we are not bound by the trial court's decision on the issue. The question of laches itself, however, is factual, and is determined by examining the circumstances of each case.
>
> We have outlined the parameters of the doctrine of laches as follows:
>
>> Laches bars relief when the complaining party is guilty of want of due diligence in failing to promptly institute the action to the prejudice of another. Thus, in order to prevail on an assertion of laches, respondents must establish: a) a delay arising from petitioner's failure to exercise due diligence; and, b) prejudice to the respondents resulting from the delay. Moreover, the question of laches is factual and is determined by examining the circumstances of each case.

Fulton v. Fulton, 106 A.3d 127, 131 (Pa.Super. 2014) (internal citations omitted).

Accordingly, we must determine whether the record supports the trial court's finding that S&K knew of the 2012 goods claim and failed to exercise due diligence by not promptly intervening or instituting an action of its own.

Mulligan Mining filed its goods claim on June 28, 2012, after Plum Property had obtained a judgment against Mineral Trading and attempted to levy on the Dozer. At the March 5, 2015 hearing on S&K's goods claim, Sean Taylor, S&K's owner, claimed that he had been unaware of Mulligan Mining's previous goods claim. N.T., 3/5/15, at 48. The trial court found this testimony not credible. See 1925(a) Op. at 6-7 ("The Court did not accept the testimony that S&K Energy, namely Sean Taylor, did not find out about the goods' claim proceeding until after the Superior Court decision. The Dozer was clearly tagged by the Sheriff. Sean Taylor owned Mulligan which filed the goods claim."). The trial court made this determination in light of a complex factual background involving interrelated individuals and entities, with which it was intimately familiar, and which we summarize below.

At the March 15, 2013 evidentiary hearing held in connection with the first goods claim, Lasko testified that he had purchased Mulligan Mining, Inc. from Sean Taylor, although he named the purchasing company as Mulligan Mining Holdings, Inc. N.T., 3/15/13, at 7. Lasko testified that while Mulligan Mining and Mineral Trading share investors, id. at 8, neither Mulligan Mining

nor Mineral Trading ever had an ownership or controlling interest in each other, id. at 7-8.  Lasko also testified that he was the managing member of Mineral Trading, the president of Mulligan Mining, Inc., and the principal of Mulligan Mining Holdings, Inc., owning more stock in Mulligan Mining Holdings, Inc. than any other person.  Id. at 39, 41-42.  In addition, Lasko testified that New Coal Holdings, LLC, of which he was the managing member, owned all of Mineral Trading's stock.  Id. at 39-40.

At the March 5, 2015 hearing on the second goods claim, Taylor testified on behalf of S&K.[1]  He stated that he "created and founded and operated Mulligan Mining[, Inc.] up until the point [he] sold it in July of 2010" to Mulligan Mining Holdings, Inc.  N.T., 3/5/15, at 6-7.  Taylor formed S&K in 2010, and "had a five year non-compete" with Mulligan Mining Holdings, Inc. Id. at 6.

The funding for the purchase of Mulligan Mining, Inc. by Mulligan Mining Holdings, Inc. came from a reinsurance company headquartered in Bermuda called RenaissanceRe.  Id.  at 9.  The funds flowed from RenaissanceRe to Angus Coal, then to Taylor's lawyer's account, and then to Taylor's account at PNC Bank.  Id. at 9-10.

Taylor testified that after selling the company, he had no equity interest

_____

[1] We note, as did the trial court, that the attorney representing S&K in its 2014 goods claim had represented Mulligan Mining in its 2012 goods claim with respect to the same piece of equipment.

in Mulligan Mining, Inc., Mulligan Mining Holdings, Inc., Mineral Trading, or New Coal Holdings. Id. at 10. He also stated that Angus Coal had no equity interest in the companies. Id. Taylor testified that after the sale closed, he continued to do "day-to-day type consulting" for Mulligan Mining, Inc. and was still primarily responsible for selling coal for the mine for a set commission. Id. Taylor stated that he had daily contact with supervisors at Mulligan Mining and weekly contact with Lasko. Id. at 11. Taylor also did some consulting work for Lasko at Mineral Trading. Id.

Taylor further testified that in early 2011 he began to be aware of serious financial problems with Mulligan Mining and Mineral Trading. Id. at 12. Taylor discussed the financial problems with Lasko, who told Taylor that he was working on a restructuring deal with Angus Coal. Id. at 12. The restructuring deal, which consolidated earlier loans, id. at 14-15, was completed in 2012. Id. at 13. Taylor testified that Lasko continued to have financial problems after the restructuring. Id. at 13. Taylor said that Lasko "basically, . . . threw up his hands and said, I can't go anymore." Id. After Lasko told Taylor that he was "done," Taylor went to Angus Coal to gauge whether it had an interest in selling its assets to Taylor. Id. at 13-14. Taylor and Angus Coal decided that the best plan was for Taylor to purchase Angus Coal's secured loan and the accompanying collateral and security, and then to foreclose. Id. at 14.

Against this background, the trial court concluded that S&K was aware of Plum Property's 2012 goods claim against the Dozer, but nonetheless failed to act until November 21, 2014, after Plum Property had filed a motion to compel the Sheriff to put the Dozer up for sale. As we have said many times, "this Court will not revisit the trial court's determinations . . . regarding the credibility of the parties." Woods v. Cicierski, 937 A.2d 1103, 1105 (Pa.Super. 2007). Therefore, we conclude that the record supports the trial court's finding that S&K knew of the claim.

Further, it is undisputed that S&K failed either to intervene in the 2012 goods claim or to file its own goods claim in 2012. Rather, it waited until November 2014, more than two years after Mulligan Mining had filed its goods claim, to file its own claim. We agree with the trial court that S&K failed to exercise due diligence and further conclude that this failure caused a substantial delay.[2]

_____

[2] S&K argues that as a secured creditor, it did not have to intervene in a proceeding between unsecured creditors. S&K's Reply Br. at 2-4. S&K further claims that Plum Property's assertion that S&K's goods claim was untimely fails because Angus Coal, as predecessor to S&K, would have had no reason to file a goods claim, since the debtors had not defaulted at the time the sheriff originally levied on the equipment. Id. at 3. S&K claims that at some point between the filing of Mulligan Mining's original goods claim and the trial court's denial of Plum Property's objection to the goods claim, Mineral Trading and Mulligan Mining defaulted on the loans they had received from Angus Coal. Id. at 9. Accordingly, S&K asserts that it took possession of the Dozer after purchasing the Angus Coal loan on March 5, 2013. Id. at 20. Notwithstanding this complex factual history, aside from asserting that it was not aware of the previous goods claim, an assertion the trial court discredited,

We next address whether Plum Property has been prejudiced by the delay. We conclude that it has. Plum Property litigated this case from 2011 through our July 29, 2014 decision. Despite our decision that effectively authorized Plum Property to execute against the Dozer to satisfy its judgment against Mineral Trading, S&K now claims that it is entitled to the Dozer. Therefore, more than six years after obtaining judgment against Mineral Trading, Plum Property continues to have to litigate its rights to the Dozer. We will neither reward nor incentivize a party that lays in wait, allows an adverse party to litigate its claim to completion, and then later claims that those proceedings do not matter.

Accordingly, we agree with the trial court that S&K is estopped from making its goods claim. In light of our disposition, we need not address S&K's remaining issues on appeal.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 12/27/2017

---

S&K fails to explain why it did not file its own goods claim sooner, especially in light of the ongoing dispute between Plum Property, Mineral Trading, and Mulligan Mining regarding the Dozer.